# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LANITA DOTSON,

      Plaintiff,                                     Case No. 15-C-452

      v.

MARY LEMMENES,

      Defendant.

## DECISION AND ORDER

Plaintiff, an inmate at Taycheedah Correctional Institution, sued Defendant Mary Lemmenes, a nurse, for alleged pain and suffering arising out of Lemmenes' treatment of Plaintiff's left knee. Both sides have moved for summary judgment. However, Plaintiff failed to respond to Defendant's proposed findings of fact, despite having been provided the proper notice and warnings as to the consequences of failing to do so. Defendant's proposed findings of fact are therefore deemed undisputed. Civil L.R. 56(b)(4). Based on the undisputed facts, the Defendant's motion will be granted and the case will be dismissed.

Nurse Lemmenes first saw the Plaintiff for knee pain in October 2012 and decided to address Plaintiff's pain through conservative measures, including weight loss (Plaintiff weighed about 230 pounds), a knee sleeve, ice and ibuprofen. (ECF No. 37 at 20.) An X-ray ordered by Lemmenes showed mild osteoarthritis. Later, the Plaintiff saw Dr. O'Brien, the prison physician, and another nurse practitioner named Margaret Anderson. According to the Plaintiff, Nurse Anderson (whom she calls "Dr. Anderson") prescribed a course of steroid injections to be administered every three months.

Plaintiff saw Defendant Nurse Lemmenes again on May 15, 2013, and Lemmenes referred her again to Dr. O'Brien in order to obtain a possible referral to a specialist. Eventually the Plaintiff saw Dr. Grossman, an orthopedic specialist from Fond du Lac. In January 2015 Dr. Grossman performed an arthroscopy in order to reduce the amount of "locking" in her knee. According to the Plaintiff, the surgeon removed three pieces of broken cartilage.

Following the surgery, the Plaintiff was noncompliant with post-operation recommendations and was seen removing the dressing, not using crutches, and not remaining on the first floor of the prison. In addition, the Plaintiff did not lose any weight, which her care providers emphasized was a contributing factor to the pain. Plaintiff's own proposed findings of fact reflect that osteoarthritis is caused by "wear and tear" on bones and joints. (ECF No. 47-4.)

Plaintiff argues that she would not have suffered as much and would not have needed surgery had Nurse Lemmenes followed the "prescription" to give her steroid injections every three months. The Defendants respond in part by noting that the Plaintiff refused injections, either due to fear of needles or a belief that the injections did not work. For example, on December 6, 2012 she refused a corticosteroid injection. (ECF No. 38 at 3.) Three weeks later, another treatment record notes a similar refusal. (*Id.* at 4.) A record from the same time period records the Plaintiff remarking that she was "freaked out by needles and don't want shots. I really would like to try other plan first." (*Id.* at 5.) On May 15, 2013, another treatment note states "Pt declines consideration for steroid injections." (ECF No. 37 at 39.)

On September 23, 2013, she did receive a steroid injection from Nurse Anderson but reported no immediate relief. (ECF No. 39 at 85.) On October 24, 2013, she reported to her physical therapist that the shot had, in fact, helped for a week but now her knee felt worse. (ECF

No. 35 at 87.) A few months later she reported that the steroid injection might have helped after all, and Dr. O'Brien injected her knee with the steroid. She "yelled a lot" but otherwise tolerated it. (ECF No. 34-1 at 107.)

Based on the record before me, it is impossible to credit the Plaintiff's version of events or to find a constitutional violation. First, there is no record of her being denied any request for steroid injections. The record suggests a great deal of wavering on the issue of injections, with the Plaintiff receiving medical counseling about injections from multiple sources. Sometimes she declined, and other times she tried the injections. From that record, it would be impossible for a jury to conclude that the Plaintiff had clearly requested steroid injections and been denied them by the Defendant. The medical record contains more than one thousand pages of treatment notes and medical requests—evidence of a high standard of care—and yet nowhere is there a demand by the Plaintiff for steroid shot that she did not receive. It is apparent that part of the problem results from the Plaintiff's own flawed interpretation of her treatment program. She appears to believe that "Dr. Anderson" (the nurse practitioner) had "prescribed" a plan of steroid injections every three months, and that the Defendant was therefore under some sort of obligation to continue to provide the injections (regardless of their efficacy). (ECF No. 51 at 1.) But that is not what Nurse Anderson wrote. Instead, Nurse Anderson stated that "if cortisone injection [is] helpful, she can have another one every 3 months." (ECF No. 39 at 86.) That is a far cry from a "prescription" that was somehow supposed to have governed the actions of Nurse Lemmenes.

Even if the Plaintiff had actually requested more shots, however, there is no evidence that they were effective in treating pain or that they would have prevented further injury to her knee. As her own proposed findings note, steroid injections have substantial side effects (ECF No. 47 at

- 3 -

4) and since she was equivocal about their effectiveness it would have made sense to avoid further injections unless they were clearly beneficial. At best, the record is spotty as to the effectiveness of the injections, and of course that record is based on the Plaintiff's own subjective reports to her treatment providers. There certainly is no evidence that steroid injections would have prevented further injury or cured the problem so that she would not have needed to undergo arthroscopic surgery.

At its core, the Plaintiff's problem is that to establish deliberate indifference she must show that a treatment provider knew of a substantial risk to her health but disregarded it, either intentionally or recklessly. *Estelle v. Gamble,* 429 U.S. 97, 104-106 (1976); *McGowan v. Hulick,* 612 F.3d 636, 639-40 (7th Cir. 2010). In a case like this, a plaintiff must show that the medical provider refused to perform a course of treatment that clearly would have ameliorated a medical problem. Here, the records show just the opposite—she was seen by multiple nurses, a prison physician and even an orthopedic specialist who performed surgery. There is no indication from the records, nor any medical evidence, that steroid injections would have been an obvious course of treatment. That fact that she has later developed subjective views on the efficacy of steroid injections is not enough to survive summary judgment. Accordingly, the Defendant's motion will be granted and the Plaintiff's denied.

Finally, I note that the Plaintiff has filed a motion to amend the complaint, seeking to add Dr. O'Brien (the prison physician) to the case as a defendant. The motion will be denied for the reasons given above. In short, there is no conceivable evidence that a failure to administer more steroid injections would rise to the level of deliberate indifference; nor is there any evidence that the Plaintiff herself demanded such injections.

The Defendant's motion for summary judgment is **GRANTED** and the Plaintiff's is **DENIED**. The case is ordered dismissed. The motion for default judgment will is **DENIED**, as the answer was timely filed. The motion to amend is also **DENIED**.

**SO ORDERED** this 9th day of March, 2016.

    /s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court